**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RANDALL KRIEWALL,<br><br>Plaintiff,<br><br>v.<br><br>KIRKWOOD SCHOOL DISTRICT, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 4:25-CV-00871-CMS |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Court's order granting Plaintiff Randall Kriewall leave to file the First Amended Complaint (Doc. 20), Plaintiff's Motion for Entry of Clerk's Default against Defendants and Request for Hearing on Damages (Doc. 28), and Defendants Howard Fields, David Ulrich, and Kirkwood School District's Motion for Summary Judgment (Doc. 29). The Court withdraws leave for Plaintiff to file the first amended complaint because he failed to file his amended complaint "without undue delay" as required by the Court's order. (Doc. 20). Consequently, Plaintiff's Motion for Entry of Clerk's Default against Defendants and Request for Hearing on Damages (Doc. 28) is **DENIED**. Lastly, for the reasons stated below, Defendant's motion for summary judgment (Doc. 29) is **GRANTED**.

## BACKGROUND

*Factual Background*

The uncontroverted facts are as follows:

Defendant Kirkwood School District ("the District") is a school district in Missouri. (Doc. 31 at ¶ 1). The District is governed by a school board. (Doc. 31 at ¶ 2). The board issues policies for the District, each of which is publicly available through the District's website. (Doc. 31 at ¶ 9). Some of these policies allow the superintendent to prohibit visitors to District property or events either indefinitely, or for a specific time if the superintendent believes the visitor has engaged in inappropriate conduct. (Doc. 31 at ¶ 17). These policies also state that any visitor who is banned from school property may, via mail or email, petition the board to lift the ban. (Doc. 31 at ¶ 19).

Defendant Doctor David Ulrich is the former superintendent of the District, and Defendant Doctor Howard Fields, III is the former assistant superintendent. (Doc. 31 at ¶¶ 3–4). Plaintiff was a teacher employed by the District from 1992 until his retirement in June 2020. (Doc. 31 at ¶ 5). For years prior to September 2020, Plaintiff also occasionally took photos for the District and students at events both on and off campus. (Doc. 31 at ¶ 6). Additionally, prior to September 2020, Plaintiff provided tutoring services to students on a non-contract basis. (Doc. 31 at ¶¶ 6, 7).

Shortly after Plaintiff's retirement, the District began receiving complaints of misconduct by staff, including Plaintiff. *E.g.,* (Doc. 31 at ¶ 20). These complaints, including those implicating Plaintiff, came to the District from a variety of sources. *E.g.*, (Doc. 31 at ¶¶ 22–34). The District hired an independent investigator, which eventually reported potential inappropriate conduct by 30 staff members, including Plaintiff. (Doc. 31 at ¶¶ 37, 38).

After receiving initial reports of Plaintiff's conduct, Assistant Superintendent Fields informed Plaintiff that he was "red-flagged", there was an investigation into Plaintiff's conduct, and Plaintiff could no longer be a volunteer, photographer, or tutor for the District. Fields did not provide Plaintiff with details of the allegations. (Docs. 31 at ¶¶ 45, 47, 48; 38 at ¶ 118). In 2021, Plaintiff had a phone call and email exchange with Superintendent Ulrich, and a meeting with the investigators' lawyer regarding the allegations against him. (Doc. 31 at ¶¶ 53–56). In 2022, Plaintiff was provided with contact information he could use to address the board via email. (Doc. 31 at ¶ 57). In 2023, Plaintiff met with Fields via Zoom and received more details about the allegations against him, and a specific advisement to send Ulrich and Fields a letter and then eventually appeal to the board. (Doc. 31 at ¶¶ 58–59, 66, Ex. E).

A few months after this Zoom meeting, after Plaintiff had sent Ulrich and Fields a letter but had not appealed to the board, the District received additional complaints that Plaintiff still had access to District property and students. (Doc. 31 at ¶¶ 67, 78). So, Fields, with Ulrich's approval, sent Plaintiff an email informing him that he was banned from District property and was not to photograph District students. (Doc. 31 at ¶ 80). That email banned Plaintiff from District property "for any reason." (Doc. 31 at ¶ 80). Plaintiff believed that this physical restriction prevented him from appealing to the board, despite District policy to the contrary and the fact that he had been provided with the board's email addresses. (Doc. 38 at ¶ 147).

A year later, Plaintiff emailed Ulrich regarding his restrictions, and Ulrich informed Plaintiff the restrictions were still in place and were not being revisited. (Docs. 31 at ¶ 96,

Ex. M; 38 at ¶ 150). Since this email from Ulrich, Plaintiff has not attempted to ask the board to lift his restrictions, nor has he reached out to the current superintendent. (Doc. 31 at ¶¶ 97, 98). Plaintiff did reach out to some board members individually but never requested that they go to the full board to lift his restrictions. (Doc. 38 at ¶ 149).

Also, while these events were transpiring, Plaintiff attempted to secure employment with two other districts: Ladue School District and Zumwalt School District. (Doc. 31 at ¶ 102). In the application process, Plaintiff disclosed to both other districts that he had been red flagged by the District. (Doc. 31 at ¶ 103). Ladue requested verification of Plaintiff's employment with the District including employment dates, title, and salary, which the District provided. (Doc. 31 at ¶¶ 105–06). A couple days later, Ladue rejected Plaintiff's application. (Doc. 38 at ¶ 153). Zumwalt, similarly, denied Plaintiff's application. (Doc. 38 at ¶ 154).

*Procedural History*

Plaintiff initiated this suit in the Circuit Court of St. Louis County, and Defendants removed the case to this Court. (Docs. 2, 5). The original complaint brings six counts: Count I seeks a writ of prohibition against Defendants to prevent Plaintiff's ban from District property. (Doc. 5). Count II requests a writ of mandamus on substantially similar grounds alleging that Defendants did not follow proper procedures in issuing the ban, even though they have a ministerial duty to do so. (Doc. 5). Count III asks this Court for a declaratory judgment that Plaintiff's First Amendment rights have been violated. (Doc. 5). Count IV asks for a declaratory judgment that Plaintiff's procedural due process rights have been violated. (Doc. 5). Count V alleges that Defendants defamed Plaintiff in giving

employment references in violation of Missouri Revised Statutes Section 290.152. (Doc. 5). And Count VI alleges that Defendants' banning Plaintiff constitute tortious interference and bad faith. (Doc. 5). Defendants filed their answer to that complaint on June 24, 2025. (Doc. 8).

Later, Plaintiff filed a motion to amend the complaint. (Doc. 19). On December 16, 2025, this Court granted the motion and ordered Plaintiff to file his amended complaint without undue delay. (Doc. 20). Plaintiff never filed the amended complaint. Instead, seven months after being granted leave to file the amended complaint, Plaintiff filed a motion for entry of clerk's default against Defendant for Defendant's failure to respond to the amended complaint, which Plaintiff had never filed. (Doc. 28). Defendant opposes the motion for entry of default on the grounds that the amended complaint was never filed. (Doc. 33).

Defendant also filed a motion for summary judgment, which Plaintiff opposes. (Docs. 29, 37). Both parties have filed Statements of Uncontroverted Material Facts and responded to the opposing party's statement. (Docs. 31, 38, 42). These motions are now fully briefed and ready for decision by this Court.

**LEGAL STANDARDS**

At summary judgment, the Court "'does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue' but focuses on whether there are genuine disputes of material fact for trial." *Walz v. Randall*, 2 F.4th 1091, 1099 (8th Cir. 2021) (citation omitted). If there are any disputed facts, the Court "view[s] [those] facts in the light most favorable to the nonmoving party, drawing all reasonable inferences

in [his] favor. *Sherr v. HealthEast Care Sys.*, 999 F.3d 589, 597 (8th Cir. 2021). "Substantive law in the relevant area dictates which facts are material, as 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* at 597 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). That said, the Court "must still determine that the [movant] is entitled to judgment as a matter of law on each claim," even when the summary judgment motion is unopposed. *Calon v. Bank of Am., N.A.*, 915 F.3d 528, 530 (8th Cir. 2019).

"[T]he requisite 'genuine dispute' must appear in admissible evidence." *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014) (emphasis in original). A plaintiff must provide more than his "own naked assertions" and must "substantiate his allegations with sufficient probative evidence." *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994); *Jefferson v. MHM Support Services*, 4:24 CV 1308 CDP, 2025 WL 1380138, at *2 (E.D. Mo. May 13, 2025) (stating that "speculation, personal opinion, and legal conclusions are not 'facts' upon which a party may rely for summary judgment purposes").

## ANALYSIS

### I. The Motion for Summary Judgment on Counts I through IV is granted because those claims are not ripe.

Plaintiff's Counts I through IV are not ripe because Plaintiff can appeal to the Kirkwood School Board.

In Missouri, a local school board is considered an agency. *Yarber v. McHenry*, 915 S.W.2d 325, 327 (Mo. 1995). Writs of mandamus and prohibition and declaratory

judgments can only be issued after a final binding decision by the agency. *Friends of Responsible Agric. v. Bennett*, 542 S.W.3d 345, 349 (Mo. App. W.D. 2017); *State ex rel. Lester E. Cox Med. Ctr. v. Wieland*, 985 S.W.2d 924, 927 (Mo. App. S.D. 1999); *Farm Bureau Town & Country Ins. Co. v. Angoff*, 909 S.W.2d 348, 352 (Mo. banc 1995); Mo. Rev. Stat. § 527.010.

There are three potential statutory exceptions that may allow judicial review. First, Section 536.050 allows judicial review of an agency rule even without a decision specific to a plaintiff. Mo. Rev. Stat. §536.050(1). A "rule" is defined as an "agency statement of general applicability" implementing, interpreting, or prescribing law or policy or describing agency procedure or practice requirements. Mo. Rev. Stat. §536.010(6). The 536.050 exception does not apply when a plaintiff challenges an agency decision rather than a rule. *State of Missouri ex rel. Ideker, Inc. v. Garrett*, 471 S.W.3d 743, 747-48 (Mo. App. W.D. 2015).

Second, Section 536.100 allows for judicial review when a person has exhausted all administrative remedies in a "contested case." Mo. Rev. Stat. §536.100. A "contested case" is a proceeding in which legal rights, duties, or privileges are required by law to be determined after a hearing. Mo. Rev. Stat. §536.010(4).

And third, Section 536.150(1) allows judicial review of a decision by an administrative officer which is not otherwise subject to administrative review, so long as that decision determines legal rights, duties, or privileges. Mo. Rev. Stat. § 536.150(1). Even in a non-contested case, such as review under 536.150, plaintiffs must exhaust their

administrative remedies prior to judicial review. *State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 472-73 (Mo. 2018).

Here, Plaintiff brings Count I for a writ of prohibition, Count II for a writ of mandamus, and Counts III and IV for declaratory judgments. *See* (Doc 5). Each of these claims fails for lack of ripeness. Plaintiff's only evidence that there has been a final agency action is Superintendent Ulrich's statement that "this matter will not be revisited." (Doc. 38 at ¶ 150). This statement by a superintendent does not controvert board policy KK and KK-AP(1), which state that an appeal of the superintendent's decision is available by writing to the board. (Doc. 31 at Ex. H).

Plaintiff also argues that board review was not available because he was banned from District property. (Doc. 38 at ¶ 140). But Plaintiff was provided with the necessary contact information to appeal to the board via email. (Doc. 31 at ¶ 57). While Plaintiff reached out to some individual board members for private meetings, he neglected to ever contact the board as a whole to review his restrictions. (Doc. 31 at Ex. I at 52:14-18; 83:79; 89:3-5; Doc. 42 at 70). Even if Ulrich had not expressly banned Plaintiff from District property, District Policy KK is clear that appeals to the board are to be made in writing and physical presence on District property is not necessary. (Doc. 31 at Ex. H).

Plaintiff also argues that review is permitted at this stage because Section 536.050 and Section 536.150 allow it and Section 536.100 does not prevent it. (Doc. 37 at 10, 11–12). Plaintiff's arguments are unavailing. Section 536.050 does not apply to decisions by officers, which is what Plaintiff is appealing here. *See, e.g.,* (Doc. 5 at 13–16; Doc. 37 at 9, 11, 12); Mo. Rev. Stat. §536.050. Section 536.100 expressly requires exhaustion of all

administrative remedies before review, and Plaintiff has not sought review of his restrictions by the board. Mo. Rev. Stat. §536.100. Likewise, the Missouri Supreme Court has made clear that Section 536.150 allows judicial review only after a plaintiff has exhausted his administrative appeals, which Plaintiff has not done. Mo. Rev. Stat. § 536.150; *Robison*, 551 S.W.3d at 472-73. Regardless of which statute is applied, Plaintiff was required to exhaust his administrative remedies before filing this lawsuit.

The facts are simple: Plaintiff was advised to appeal his restrictions to the board, (Doc. 31 at Ex. E), he had access to the policy allowing board review, (Doc. 31 at ¶ 9), and he was provided with contact information for the board. (Doc. 31 at ¶ 57). On summary judgment, Plaintiff has presented no admissible evidence to challenge these facts.

Therefore, the uncontroverted facts establish that Plaintiff has failed to exhaust his administrative remedies, and his claims in Counts I through IV are not ripe for review by this Court.

**II. The Motion for Summary Judgment on Count V will be granted because Plaintiff has presented no evidence that Defendant violated Mo. Rev. Stat. § 290.152.**

In the absence of any evidence supporting this Count, Defendants are entitled to judgment as a matter of law.

Missouri Revised Statutes Section 290.152 allows an employer, when asked for verification of employment, to (1) respond in writing; "(2) disclose the nature and character of service rendered" by an employee to his employer and the duration of employment; and "(3) truly state for what cause, if any, such employee was discharged." Mo. Rev. Stat. § 290.152. Section 290.152 also immunizes an employer from liability for

responding to an employment verification request "unless such response was false and made with knowledge that it was false or with reckless disregard for whether such response was true or false." *Id.*

Also, under Missouri defamation law, "[t]he general rule is that a defendant's communication of a defamatory statement only to the plaintiff who then discloses the information to third parties does not subject the defendant to liability." *McCormack v. Maplewood-Richmond Heights Sch. Dist. Bd. of Educ.*, 935 S.W.2d 703, 711 (Mo. App. E.D. 1996) *see also Jones v. McNeese*, 746 F.3d 887, 899 (8th Cir. 2014) (finding that plaintiff's allegations in his complaint and his deposition that defendant made stigmatizing statements to third parties are hearsay and cannot be used to defeat a motion for summary judgment).

Plaintiff argues that a reasonable jury could conclude, based on the timing of his employment rejection and the general sequence of events, that Defendants acted in bad faith. (Doc. 37 at 13). That is not a supportable conclusion on this record. The summary judgment record shows that after Plaintiff applied for employment, Defendants received an employment verification request from Ladue School District and responded only with Plaintiff's dates of employment, job title, and salary. (Doc. 31 at ¶ 105). Plaintiff was subsequently denied employment by Ladue School District and Zumwalt School District. (Doc. 38 at ¶ 153.). Plaintiff admits that he informed Ladue and Zumwalt of his "red-flagged status." (Doc. 38 at ¶ 152). Plaintiff's only "evidence" of any wrongdoing by the District in this regard is his own "naked assertion" that Defendants defamed him or made some statement beyond that found in the record. (Doc. 31 Ex. I at 133:19-134:9). Worse,

Plaintiff specifically testified that he had no knowledge of any statement, outside that which is contained in the record, made by Defendants to either Ladue or Zumwalt. (Doc. 31 Ex. I at 133:19-134:9).

With no admissible evidence to support it, Plaintiff's claim fails, and Defendants are entitled to judgment in their favor as a matter of law.

## III. The Motion for Summary Judgment on Count VI will be granted because all Defendants are immune from suit.

Both sovereign and official immunity immunize a government defendant from suit, but they are distinct doctrines. *See Stephens v. Dunn*, 453 S.W.3d 241, 249 (Mo. App. S.D. 2014). "Broadly speaking, sovereign immunity protects governmental entities from tort liability and can be invoked when a governmental official is sued only in his or her official capacity." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019). "Official immunity, on the other hand, protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Id.* This distinction matters because "[o]fficial immunity does not apply… in two narrow exceptions: (1) when a public official fails to perform a ministerial duty required of the official by law, or (2) when a public official acts in bad faith or with malice." *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. 2024).

When a plaintiff fails to specify whether a claim is brought against a defendant in his official or individual capacity, the court must determine the capacity based on several factors. *S.A.A. v. Geisler*, 127 F.4th 1133, 1139–40 (8th Cir. 2025). Some of these factors

include: "how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." *Id.* at 1139. The goal of these factors is to determine whether the "course of proceedings has put the defendant on notice that he was being sued in his individual capacity." *Id.* (citation modified).

**A. Because Plaintiff brings claims against Defendants in only their official capacities, all defendants are entitled to sovereign immunity.**

Each defendant is entitled to sovereign immunity from Plaintiff's tort claim in Count VI.

Under Missouri law, public school districts are state entities entitled to sovereign immunity, except in cases of premises liability or motor vehicle negligence. *Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. 2008). Tort claims against government officials in their official capacities are suits against the governmental entity itself. *Wirken v. Miller*, 978 S.W.2d 60, 62 (Mo. App. 1998)

Here, Plaintiff brings a tort claim against the Kirkwood School District. *See generally* (Doc. 5). This claim obviously does not arise out of the exceptions to sovereign immunity for premises liability or motor vehicle negligence, and therefore, the District is entitled to sovereign immunity. *See Southers*, 263 S.W.3d at 609.

Similarly, Plaintiff brings the same tort claim against Ulrich and Fields, who are government officials. *See generally* (Doc. 5). Plaintiff fails to state whether the claim is brought against them in their official or individual capacities. But Plaintiff does indicate that "at all times… Ulrich… was acting in his official capacity as the superintendent…"

(Doc. 5 at ¶ 3). Moreover, Plaintiff does not request punitive damages. The only indication that Plaintiff sues Ulrich and Fields in their individual capacities is his oblique and conclusory contention in his Response in Opposition to Defendant's Motion for Summary Judgment that official immunity does not apply. (Doc. 37 at 14). Plaintiff does not explain why official immunity would even be an issue here. Instead, Plaintiff acknowledges that official-capacity tort claims against Ulrich and Fields, as state officials, are treated as claims against the District for sovereign immunity purposes. (Doc. 37 at 14); *Wirken*, 978 S.W.2d at 62.

Therefore, this Court ascertains that this tort claim is brought against Ulrich and Fields in their official capacities, and they are immune from suit on this claim.

**B. Even if Ulrich and Fields were not entitled to sovereign immunity, they would be entitled to official immunity.**

In the alternative, even if Plaintiff somehow put Ulrich and Fields on notice that they are sued in their individual capacities, they would still be entitled to immunity from this suit.

Official immunity does not apply in two narrow circumstances: (1) when a public official fails to perform a ministerial duty, or (2) when a public official acts in bad faith or with malice. *Love*, 689 S.W.3d at 495. For this Court to find bad faith or malice, there must be some evidence of "actual intent to cause injury." *Id.* at 496.

Even when a Defendant is aware he is being sued in his individual capacity, whether an act is ministerial or discretionary is a case-by-case determination. *Southers*, 263 S.W.3d at 610. Some of the factors a court is to consider are the nature of the public employee's

duties and the extent to which the act involves policymaking or the exercise of professional judgment. *Id.* A discretionary function is one in which the employee must exercise "reason in the adaptation of means to an end and discretion in determining how or whether an act should be done..." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984). "When even slight discretion exists, the duty is not ministerial." *Love*, 689 S.W.3d at 496.

Here, Plaintiff alleges that by banning him from school property without properly following District procedures, Defendants either acted in bad faith or with malice while failing to perform a ministerial duty. (Doc. 37 at 8–9, 14–15). Unfortunately, Plaintiff's argument fails on both accounts.

First, Plaintiff has presented no evidence of bad faith or malice. Plaintiff merely suggests that perhaps a jury could find malice without evidence beyond the sequence of events, because malice determinations are "fact intensive." (Doc. 37 at 14–15). But at this summary judgment stage, Plaintiff must support his arguments with facts. Plaintiff has failed to offer any evidence of Ulrich and Fields' intent to cause him injury. *Love*, 689 S.W.3d at 496.

Also, while Plaintiff claims that District policy creates a ministerial duty, he fails to establish that Ulrich and Fields had a ministerial duty here. As to the nature of their duties, they were tasked with protecting the District and its students, a duty that is both public and official.

Regarding the extent to which their actions involved policymaking or the exercise of professional judgment, Ulrich and Fields' act of banning Plaintiff from District property, while not an exercise in policymaking, did require professional judgment. *Southers*, 63

S.W.3d at 610. Though the policy dictates that certain details should be included in the notice of the ban, whether certain conduct is "inappropriate," whether to enact a ban, the extent of the ban, and the medium of communicating the ban are all discretionary elements left to the superintendent under District policy. (Doc. 31 at ¶ 17, Ex. H). Taken as a whole, this act of banning Plaintiff was a discretionary act. Given that "even slight discretion" makes an act discretionary, even if Ulrich and Fields failed to follow the procedure to the letter, their failure does not transform the act into a ministerial one. *Love*, 689 S.W.3d at 495-96.

Because Plaintiff has failed to establish both the element of bad faith and that Ulrich and Fields had a ministerial duty, they would be entitled to official immunity even if they did not enjoy sovereign immunity.

## IV. Leave to file the amended complaint is withdrawn because Plaintiff did not file without undue delay; the Motion for Entry of Clerk's Default is, therefore, denied.

On December 16, 2025, the Court granted Plaintiff leave to amend his complaint and instructed him to file the amended complaint without undue delay. (Doc. 20). Plaintiff never filed the amended complaint, and the amended complaint is not properly before this court.[1]

Without the amended complaint, the case has continued apace for nearly a year, and the parties have continued to primarily rely on the original complaint in their filings before

[1] Attaching a proposed complaint to a motion for leave to file does not mean that the amended complaint is filed when the motion for leave is granted. *See, e.g., Sorrells v. Harrah's N. Kansas City, LLC*, 4:25-CV-00799-RK, 2026 WL 1587133 at *3, n.5 (W.D. Mo. June 3, 2026).

this Court. *See, e.g.,* (Docs. 29, 37, 41) (spending most of their time arguing over the counts in the original complaint). The Court concludes that allowing Plaintiff to amend at this late stage, after the completion of briefing of a motion for summary judgment and competing statements of material facts, would not be in the interest of justice. *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.").

Thus, the original complaint (Doc. 5) remains the operative complaint in this case. Defendants filed an answer to that complaint on June 24, 2025. (Doc. 8). Therefore, Defendants are not in default, and Plaintiff's motion for entry of clerk's default (Doc. 28) will be denied.

## CONCLUSION

Because Plaintiff failed to file an amended complaint without undue delay, leave to file the amended complaint (Doc. 20) is **WITHDRAWN**, and Plaintiff's Motion for Entry of Clerk's Default against Defendants and Request for Hearing on Damages (Doc. 28) is **DENIED**.

Because Plaintiff has not exhausted his administrative remedies, Plaintiff has presented no evidence of false or defamatory statements, and Defendants are entitled to immunity from suit, Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED**.

Accordingly,

**IT IS HEREBY ORDERED** that Leave to File the Amended Complaint (Doc. 20) is **WITHDRAWN**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Entry of Clerk's Default against Defendants and Request for Hearing on Damages (Doc. 28) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED**.

An order of Summary Judgment will accompany this Memorandum and Order.

Dated this 29th day of October 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE